How many of you could have done that when you were law students? How many of you? I couldn't have, I probably would have fainted, all right, 142380 Ghiselli v. Colvin and Mr. Schiff. How are you? I'm good. How are you? I'm good. May it please the court. My name is Jim Schiff and I'm here on behalf of the plaintiff, Deborah Ghiselli. This is a social security disability case in which the administrative law judge made several errors. And we are asking this court to reverse on three main issues. First, the ALJ erred in failing to afford great weight to the opinion of Ms. Ghiselli's treating physician, Dr. Delo. Second, the ALJ erred in assessing Ms. Ghiselli's credibility. And third, the ALJ erred in assessing Ms. Ghiselli's residual functional capacity. For a little bit of background, in August 2007, Ms. Ghiselli was injured while working as a customer service representative at Walmart, when a customer with a full cart of items ran directly into her lower back. And she subsequently saw Dr. Delo, her treating physician, and a sports medicine doctor for treatment of her lower back, and saw her 17 times between August 2007 and September 2010. Dr. Delo diagnosed degenerative disc disease with osteoarthritis. She noted that Ms. Ghiselli was obese, with a height of 5'2 and a weight of 231 pounds, and noted clinical findings of tenderness of the mid to lower lumbar spine, numbness in her legs, weakness in her legs, and pain with prolonged sitting, standing, and walking. You know, these cases that involve pain are really often the most difficult, given the extent to which they rest on the ALJ's credibility findings. Once the ALJ found that she was not credible, as to the degree and the persistence of the pain, doesn't it follow that she was able to do more than she was telling Dr. Delo, for example? Well, if the ALJ's credibility finding was proper, in our opinion it was not, then that would be a correct inference. In this case, we're contending the credibility finding was improper because the ALJ did not consider the qualifications that Ms. Ghiselli placed on her activities, and made improper inferences as to how often she was doing them and to what degree of difficulty she had. For example, Ms. Ghiselli was using a motorized cart to go grocery shopping, but all that the ALJ said in his decision was that she was going grocery shopping twice a week. But the fact that she was in a motorized cart is relevant because he found that she could be on her feet for up to six hours a day, even if she could alternate sitting and standing. And he thought that she could do light housework, but he did not discuss the testimony indicating  So there are some concerns about the degree to which the ALJ analyzed the evidence properly. Going back to the opinion of the treating physician, the ALJ found that there was no basis, no medical basis for the ALJ to continue the four-hour work restriction after September 2007, after Ms. Ghiselli attempted to work but failed. And we contend that this was an improper medical conclusion because the MRI evidence was actually worse in 2009 than it was in 2007. But the pain specialist, one of her treaters, said it was essentially the same. Right. If the pain was essentially the same and the ALJ found that the four-hour restriction was reasonable at the time of her injury, then the four-hour restriction, in our view, should have continued because there isn't any evidence in this file that Ms. Ghiselli's pain had any kind of prolonged improvement. She would get a few hours of relief from the pain injections, and she even had a procedure where the pain management physician used radio waves to burn the ends of her nerves to try to relieve the pain, and it didn't work. And we also want to point out that Ms. Ghiselli was getting chiropractic treatments and physical therapy. She had lumbar injections, and the most she ever got was six hours of pain relief. Well that's what her testimony was, but that's what the ALJ found exaggerated, essentially, not in conformity with the medical evidence. And to the extent that the attack on the agency physicians had to do with or has to do with their failure to account for the latest MRI evidence, I was concerned about that initially, but the ALJ specifically accounted for that and said the pain doctor, the treater, said the findings were essentially unchanged. It's the same degenerative disc disease affecting the same locations of the lumbar spine, and it's under moderate control. It's like, essentially, is what I can glean from the opinions. It's still there, but it's not completely under control. With those medical opinions, it's up to the ALJ to make a capacity finding. Well the treating physician regulation, 2404.15.27, that states that when there are conflicting medical opinions, Social Security generally affords greater weight to the opinions of treating physicians because of that examining relationship. And it would have been one thing if Dr. Delo had treated Ms. Gisele just one or two times, but she treated her 17 times. And three years after ending her employment at Walmart, Dr. Delo still believed that she could not work more than four hours a day. And under Social Security ruling 96-8P, if an individual cannot work a 40-hour-a-week work schedule, then they are considered disabled by the administration. To what extent was Dr. Delo's finding based just on the representation from his patient that she was in pain? In looking through the records, it appears that Dr. Delo contemplated she would be going back to work, and then she reported pain, and that resulted in the restriction. If, as the ALJ apparently did, you discount the credibility of her pain description, what else in Dr. Delo's examination or in the medical records would support the restriction that he suggested or she suggested? Well, Dr. Delo noted clinical findings, and she believed that those clinical findings would support a four-hour restriction. And those were tenderness in the spine and numbness and weakness in the legs. Interestingly, on page 622 of the record, the origination of an actual trial that Ms. Gisele engaged in. She was injured at Walmart, was off of work for a few weeks, and then she went back to Walmart to work at her job. And after four hours of the job of sitting and standing and walking and lifting, her symptoms returned. And those symptoms were pain. And because pain is very difficult to measure, and a lot of that has to do with the credibility finding, Ms. Gisele, in our view, did not engage in any activities or do any other kind of work that would lead the judge to reasonably conclude that she could work an eight-hour day. And as far as the state agency physician's opinions are concerned, the only reason the state agency physicians' opinions over the treating physician opinion was that they were familiar with Social Security rules and they were trained and familiar with applicable standards. But if those sorts of reasons were enough to adopt a non-examining physician over a treating physician, then the opinions of the non-examining state agency physicians would always be entitled to greater weight. Do I have any other questions? You'll save some time. I'll save some time for rebuttal. Thank you so much. Thank you. Hello, Ms. Siegel. How are you? Fine, thank you. How are you? I'm good. Still good. One day. Anyone want to change that? Go ahead. Good morning, Your Honors. Good morning. My name is Catherine Siegel. I represent the Commissioner of Social Security in this case. I would like to clear up a misconception that the claimant attorney has stated about Dr. ALJ's weight he gave to it. The ALJ did not find that any time that the four-hour restriction was reasonable for light work. The ALJ noted in the decision that medium work is what the claimant's doctor was referring to when he was talking about the four-hour restriction. The ALJ put this opinion in the context of it stemming from that initial injury that happened while she was working as a medium exertion customer service manager at Walmart. He noted in the decision at page 30 that that was something that he considered, that that was 31 at the top. It talks about the opinion from Dr. Dela was in the context of the claimant's ability to perform the work at her past employment at Walmart at a medium exertion level rather than at a light exertion level. So at no point did the ALJ find that for a light exertion level it would have been reasonable for her to have been restricted to four-hour work shifts. Given that Dr. Dela was still saying that you could only work four hours a day three years after the energy, was the ALJ wrong to say this limitation really only applied in the immediate aftermath of the injury? Well, what the ALJ said was that that's where the opinion stemmed from. And then at this point, when he was looking at the later opinions that still assess a four-hour restriction, he is saying that the objective findings don't support that. The objective findings were very normal. Actually, throughout the time, even at the time of the accident, the MRI findings were showing only mild to moderate abnormalities in the spine. And that continued throughout the period. There was no point where she was being found she had severe impairments or severe restrictions in the back, according to the MRI and to the X-rays also showed mild to moderate abnormalities. Do you think the ALJ, well, you don't, of course, but did the ALJ place too much weight on what she was able to do in her day-to-day life? I mean, light housework, laundry, using her computer, feeding her dogs, letting them outside. I'm not sure how the ability to do those things would bespeak an ability to work an eight-hour day. Well, the ALJ didn't equate the two. He was making a credibility finding where he was looking at inconsistencies in the claimant's statements. And at the hearing, when he asked her to describe her pain, she said on a 10-point scale, where 10 is you're screaming in the So, when you're talking about that level of pain and then you're looking at daily activities that are fairly normal, that would fit in the very restricted range of functional capacity that the ALJ assessed. The ALJ didn't say she could go back to her medium exertion job. He actually found a very restricted range of work with a sit-stand option and ultimately found that the claimant could go back to her jobs that were sedentary. The step four finding was for three jobs that were basically clerical type jobs where she would be sitting for most of the day. So, this is a very restricted range of work that the ALJ found. What about the assumption that despite her need to frequently change positions, she would be off-task no more than 10% of the time? I mean, shouldn't that 10% figure be explained especially in light of her obesity and the pain she maintains she experienced? I mean, isn't it possible she might require more than 10% of her time to make these adjustments? That would be purely conjecture because none of her doctors said that she required any restrictions of being off-task when changing positions. In fact, the two treating physicians who assessed alternate sitting and standing never suggested she would be off-task. That appears to be something the ALJ gave her as a generous recognition that maybe because she was obese or she has knee and back problems, getting up and sitting down, changing positions may take a little bit longer, but that's something that the ALJ accommodated as a generous accommodation. Not something that the claimant even claimed that she needed to do. She didn't claim at the hearing that she had any loss of concentration or any kind of being off-task when she was changing positions. So really, it was a very generous thing that the ALJ gave and the V.E. identified the past work as accommodating that too. Do we have any further questions? Thank you very much. Mr. Schiff, come on up. Just a couple of quick points on rebuttal. The ALJ stated that the four-hour work restriction was not subjected by, was not supported by objective findings and the Commissioner argues that the claimant, Ms. Gisele, did not have ongoing severe spinal problems. But the ALJ himself noted that the 2009 MRI was worse than the 2007 MRI and the central disc protrusion at one level was more pronounced in 2009 and she also had the additional condition of facet arthropathy that she did not have in 2007. And the Commissioner also argues that a light work residual functional capacity finding is severely restrictive. But what a light functional capacity finding really means is that every day, day in and day out, the individual must be able to lift 20 pounds for up to two and a half hours a day. They have to be on their feet for up to six hours a day. And even though the judge gave her a sit-stand option, a 10% off-task time is only six minutes out of every hour. So an individual with arthritis and obesity and degenerative disease may require more time than that. Thank you, Your Honors. Thank you, Mr. Schiff, and thank you, Ms. Segal. And the case will be taken under advisement.